18-1409 Thomas Jackson Miller v. Sunapee Difference, LLC. Good morning, your honors. May it please the court. My name is Daniel Perrone and I represent plaintiff appellant Thomas Jackson Miller and this lawsuit arising from his collision with snowmaking equipment that was not plainly marked or visible at the now Sunapee Ski Resort which is operated by the defendant appellee. With your honors permission I would like to request two minutes for rebuttal. You can. As this court reaffirmed less than two months ago there can be no mutual assent or meeting of the minds and hence no contract if the one to whom an agreement is supposedly offered is unaware of the terms and conditions of that agreement. And I'm referring to the National Federation for the Blind Against a Container Sort Case. Since Mount Sunapee cannot establish that Mr. Miller was aware of the liability release that was printed on the lift ticket he purchased from Mount Sunapee and its existence was never called to his attention, the threshold issue before this court of whether an exculpatory contract was even formed in the first instance boils down to whether the liability release was so conspicuous that Mr. Miller should be charged with constructive notice of its existence. Let's examine your premise counsel. First of all National Federation for the Blind has very little to do with this case because that was a case where there physically was no contract for anyone to look at. That's correct. That's not this case. There was a contract printed on the lift ticket. There was notice of that contract. There was a caution concerning it on the lift ticket itself and the district court found under the circumstances that there was opportunity had the plaintiff chosen to exercise it to read the lift ticket. There was no barrier to him doing so. He peeled off the backing, pasted it to his pants and could have read it had he chosen to do so. That was the district court's finding but the district court also noted that mutual assent is not a necessary element to forming an exculpatory contract which is. That's a matter of law. That's correct. Which we can deal with but what I'm dealing with is your client if it hasn't been read and the terms aren't known. That's not so. If a party chooses not to read a contract but takes actions that binds him to it, that contract can be binding. That contract can be binding if the party is aware of the fact that there is a contract in the first place. But here your client admitted in his deposition that he was aware of the language on the lift ticket that he peeled off the backing and pasted the lift ticket to his ski pants. Just with respect to the record, my client did not testify that he was aware that there was a contract on the ticket or of the peel off backing with respect to the stop sign provision. He was specifically asked, up through your Sunapee skiing career and the day of this accident, your testimony is you were never aware that language on lift tickets typically had purported liability release language or assumption of risk language? I don't recall ever seeing this so I can't say I was aware. And that's from his supplementary deposition? That's a direct quote from his original deposition. There was only one deposition. Judge LaPlante ordered a supplementary deposition. He ordered supplementary discovery and that supplementary discovery was a deposition. The only prior testimony before that was two affidavits that were submitted in response to the initial motion that was filed by Mount Sunapee. There's nothing on the records in which he testifies, I was aware of the release? The record is completely devoid of any evidence that says he was aware. So the pressure point from the colleague we just had is on this issue of notice. Was there notice of the contract? If he was constructively on notice that there was a contract, whether he looked at it or not is neither here nor there. That's exactly correct. Okay, so as I understand the precedent, Reynolds is potentially the best case for you but potentially not that good for you. So can we just talk about Reynolds? There, there's a lift ticket like this. I take it in Reynolds was the release on the face of the lift ticket when it was handed face side up you would see the release? Yes, and there was a stop sign provision on the backing of the ticket which was peeled off and removed. At least to my mind, the first hurdle you have to get through is how you can say there was no notice of the release when the ticket presented face side up says it has a release. Right, so... This one in New Hampshire law suggests to me that the mere fact that the ticket says on the front of it, here's the release, is not enough to put you on notice that you are being asked to release your rights. Right, as a matter of law in New Hampshire law says, that is not enough. Especially when you have a situation where the assent is manifested by peeling off the back of the ticket. What case says that that is not enough? Does Reynolds say that? Reynolds says that is not enough. They said that that was a question for the jury to determine whether or not a reasonable person would have known of the existence of the exculpatory contract on the ski lift ticket. And was that, did that have anything to do with the way the release was presented on the face of the ticket? Well, there were, with respect to the face of the ticket, they don't really get into much detail about it. I went through an analysis of the features of the face of that ticket compared to the face of the ticket that Mr. Miller purchased. Reynolds seems to focus on the back of the ticket. They do focus on the back of the ticket, and I would like to touch on the back of the ticket. But what I'm trying to, I want to get to just, what do we do about the face of the ticket? Because it seems to me the strongest version of your case would be that I didn't even know to look at the back. That's correct, there's no reason to look at the back. There's no New Hampshire law that suggests you can win on that point, that a jury could find that the face of the ticket, even though it references a release, is not itself enough to put you on constructive notice. Well, other than the Reynolds case, which I believe touches on that slightly. It didn't seem to be going one way or the other on it. Right, exactly. And there's no other New Hampshire case that has addressed this precise situation where you have a lift ticket with a liability release on it that's on sign that the plaintiff... Did you argue to the district court that you could win on the ground that because the face of the ticket didn't give you enough notice, it doesn't matter what's on the back? Yes, that's correct. And we put a quote in our reply brief that shows just that, that we argued that the lift ticket itself did not present the liability relief in a sufficiently conspicuous manner to convey its existence. That was one of the arguments... Was that front and back, or just front? That was front and back. That's what I'm saying, did you make the argument to the district court that the front alone was not conspicuous enough to apprise you you needed to look at the back? Yes, and to that point we used an expert affidavit from Stephen B. Wilcox, PhD, who's a human factors expert, and he went through a list of ten features of this lift ticket, including the features on the front of the ticket, that would make it so that a reasonable person would have no knowledge of the existence that there was a liability release printed on the ticket. I'm a little unclear about the posture of this case in terms of your argument. The judge ruled on summary judgment. Correct. Now, you seem to be suggesting that there is a factual issue as to, and dispute, as to whether your client was able to, or saw the liability release, or the circumstances surrounding that. Why isn't that a matter for a jury? I believe that, if I may answer the question, I believe that at a minimum it is a matter for a jury. The evidence in this case does not establish that he was aware of the liability release on the lift ticket, so at that point you can't rely on his subjective mindset. You have to look to what a reasonable person in his position would have known when presented with this particular lift ticket. And I believe that, at a minimum, that's a question that a jury should decide. It shouldn't be decided as a matter of law against Mr. Miller. There's no further questions. Can I just ask you about recklessness? Yes. But I do want to ask about recklessness. So just on recklessness, could you just say a word or two about your argument? Sure. Our position with respect to recklessness is, based on the limited evidence that we have in the record at this point, because no discovery had been really had on this issue, and certainly no deposition testimony, we have an affidavit from the operations manager of Mount Sonope, which we believe shows that Mount Sonope was aware that there were metal pipes, which are the holder for the snowmaking equipment, that were buried underneath the snow. And they said, particularly in snowy winters, such as the one when this accident happened, the snow holder and the pipe would become covered with snow. So in light of that awareness, and they're really the only ones that are aware of where these pipes are located on the mountains, we believe, at a minimum, the failure to do that, in light of the fact that they knew or potentially knew it was covered, constitutes a disregard for the life and safety of others that would be skiing down the slopes with no awareness that there is a metal pipe that's concealed beneath the snow. Thank you. Good morning, your honors. May it please the court. My name is Thomas Quarles. I'm the law firm of Divine Noment & Branch. We represent the defendant, Appelli, the Sonope Difference LLC, who I'll refer to as Mount Sonope. We urge you to affirm the trial court's very case, affirming summary judgment for Sonope, following more than a year of pleadings, full paper discovery, an amended complaint, and full discovery, especially on the history of the plaintiff's extensive prior experience with liability releases at Mount Sonope, including his execution of multiple season pass releases, and his use of at least two prior Sonope lift ticket releases identical to the release on his lift ticket that he used on the day of the accident. The plaintiff claims there are genuine issues of material fact that preclude summary judgment. Pursuant to his claim, that he made every possible effort not to read the release, and if he didn't read it, it can't be enforced against him. Is it your argument that the fact that the plaintiff had skied on prior occasions, was familiar with the release, that in and of itself defeats his claim here? No, that's not. That's not the totality of our claim by any means. We think that this court, as the trial court did, needs to look at the entire history of what the trial court called Mr. Miller's engagement with lift ticket releases at Mount Sonope, as well as written liability releases at Sonope. And that's why the trial judge decided not to make a decision on summary judgment following oral argument, but to authorize this limited supplemental discovery to inquire as to that, and that's why we took that position, or I However, he does say in his deposition that yes, I had every opportunity to read that release, I wasn't rushed, I could have, and I chose. That goes to the issue of whether he had time to read it if he was aware of it. But there's a threshold question of was he aware of the release. Certainly, and he must have been, because as you've alluded to, it was handed to him, and he says, with the liability release language facing up, and he doesn't see, he couldn't Well, that's under New Hampshire law, when I get a ticket, and it has a release printed on it in small print on part of the ticket, what in New Hampshire law tells me that a jury cannot find, or must find, that that is notice of the release's existence? Does that answer that in a number of ways? First of all, we don't conceive that this is fine print. If you look at the language of the release Okay, whatever you call that, that size print, what in New Hampshire law says a jury must find a release that looks like that on the front, suffices to give notice that you should turn it over? Well, again Or take some act You don't have to turn it over. Obviously the release He doesn't peel off the back to assent, right? If he doesn't peel off the back, he doesn't assent. I would agree, but as you know, his claim is that he never saw the peel off backing because he didn't turn it over, he did it somehow by going like this Just let me finish. Nothing on the front, his claim, apprised him sufficiently or a jury so could find that he should do anything that would require him to look at the back and peel it off. That's the first argument he makes. Well If he's right about that, then a jury could find that he didn't know that there was a release. So I'm just asking, in New Hampshire law, what says he's wrong about that? Okay, I don't think that's the proper analysis. It is expected, but not vital, that he read and observe that stop sign language on the back of the ticket. It's expected because normal people would look at the release, that stop sign language, as they peel the release off. And he didn't do that. He just said he didn't read that portion. What's operative is that the other side clearly says liability release in large cap, bold type That's the front. The front, okay, yes. And it was pointed to him and he said What in New Hampshire law says a jury could not conclude otherwise about the significance of what's on the front of the ticket? That's all I'm asking. Because these are legal questions. They're not questions for the jury. I'm just asking, what in New Hampshire law? The litany of the three cases. The three liability release cases in a recreational context in New Hampshire. First Barnes, then Dean, then McGrath. McGrath being the leading case, my case. Those three cases are consistent. They set forth In the facts in McGrath, was there signage or not? Tell me about the facts in McGrath. The McGrath case did not have any signage. The McGrath case was based on two similar written releases, as was Dean and Barnes. We do have, you've talked about the Reynolds case, we do have another Superior Court case. And again, these are Superior Court sub-opinions. They're not pronouncements in the Hampshire Supreme Court. But a second lift ticket liability case, which enforced the release, was the Kinnear case. C-A-M-I-R-E discussed in our brief. That's the one with the sign? That had a sign, but more significant, it's the same judge. The judge in Reynolds, Superior Court judge, a number of years later, looked at the same issue in Kinnear, essentially, but the crucial difference being, in his judgment, that the peel-off backing in Kinnear did not have this advertisement for the Cranbois Health Club that he found distracting for two reasons. It was in color, the release language on the same area was not, and the font on the health club, free admission to the health club, was much larger than the release language, and onto the health club advertisement, and he said that created a jury issue. I'm not sure that's correct, whether that creates a jury issue. Our understanding is that these are legal issues, and you need to judge this by a reasonable person's standard. And if you look at it in that perspective, Judge LaPlante and all the New Hampshire Supreme Court cases that look at this are bound to do so. With a reasonable person being presented with this release, and not just a reasonable person, a reasonable person with Mr. Miller's background, including the fact that he is an attorney who has done insurance coverage work early in his career, would they be on notice from that totality of events that this is a liability release that he is entering into, whether he likes to or not, by the action of placing it on his clothing so that he could ride the list? Well, what starts that chain of events? I still haven't heard what I regard as an answer to Judge Barron's question. What triggers that chain of events? Is it the lodge print release on the front of the ticket? In Mr. Miller's case, apparently, yes. In 99.9% of cases, it's the stop sign. How about 99%? Is there something about New Hampshire law that says when you're presented with a document that says liability release in big type, that you are then on notice that if you take certain action referring to that document or concerning that document, that you're releasing rights? The doctrine is the key element of enforcing releases in New Hampshire that the plaintiff must have had an opportunity to read the release. But see, if you took that literally, suppose the face of the ticket didn't mention liability release at all, and instead it's just the back. Is that an op? No. Not in this case, because he didn't read the back. But in this case... No, no, no. You're saying as a matter of law, it doesn't matter whether he read it. You're saying as a matter of law, he's got to at least get a ticket? Yes, he does. And he did. Okay. So then the question is, what does that ticket need to say to get him to be on constructive notice that something he's going to do with that ticket is going to manifest a scent? Okay? One possibility is the face of the ticket's blank. Here's just a blank piece of paper. It turns over, you turn it on the back, and you pull something off, there would be a stop sign. Okay? One might wonder, gee, would I know that when I peeled off the back, I was manifesting a scent to a release when the front of the ticket was blank? I might think, no, I wouldn't know that. Now we've got a face of a ticket that does more than that because it says liability release. What in New Hampshire law says that's enough? That's what we're trying to get an answer to. Again, what in New Hampshire law says that's enough is simply the application of the three leading cases, Barnes, Dean, and McGrath. Those are all foursquare on focusing on the opportunity. And Mr. Miller eventually in his deposition said, sure, I could have gone to the cafeteria, had a cup of coffee, read both sides of this thing, but I didn't. I chose not to. If I could just finish, just take that to the logical purity. As a matter of policy, we can't have people avoiding releases by a willful failure to read them so that it's not enforceable against them. The opportunity doctrine pretty much has to be there in this context, otherwise you could purposely not read it and avoid it. Could you just address the recklessness issue? Sure. Again, I thought that I'll just put it in a pointed way. I understand his argument. There was an awareness that there are these metal pipes on the ski slopes, and there's an awareness that when it snows really heavily, they'll be buried and covered. And as the record presents itself, there's no indication that any notice was given to any skier that those pipes would be under the snow at the time this accident occurred. So why isn't that wanting a reckless conduct? I'll just take a minute to do this. You're implicating first the language of the ski statute. No, I'm not. Well, I think I don't mean to be. I just wanted to Indulge for a second. The ski statute has certain duties upon skiers, certain duties upon ski operators. On this subject of snowmaking and grooming, it just says that skier operators must, where applicable, note on their trail board that snowmaking and grooming operations are ongoing. That factually is not an issue in this case because The recklessness claim here has nothing to do with that. The recklessness claim here depends on an email that indicates some specific knowledge on the part of the management of the ski area. If I can respond, the grooming note that is the sole basis for their attempt to amend the complaint to add a recklessness claim is not as to these steel pipes that the plaintiff told you about. It's as to a different snowmaking equipment at a different part of the ski area in a beginner terrain, which is not what was at issue with Mr. Miller's skiing, two or three weeks earlier. The trial judge said that's too remote in time, place, and manner to support a claim for reckless, wanton, or positive misconduct where the standard has to be that the ski area made a conscious choice  So there's nothing in the record that shows that the ski resort knew these pipes were on ski slopes? At the trail that Mr. Miller used? Yeah. Yeah, there are pictures. Yes, we put the pipes in the trail. Right. And then the question is why, when you knew that you put the pipes in and you knew it snowed, why wouldn't that make it reckless? That's all I'm asking. Because, I'll go back to the statutory analysis, we have no duty under the ski statute to mark those. Got it. Period. Thank you. And no common law duty? Pardon me? No common law duty? Well, again, the New Hampshire case law makes it clear, if you look at Ray Esky on this issue, that the ski statute precludes negligence claims, common law claims, relative to at least any and all inherent risks in the sport of skiing. Thank you. I'd like to start off and address the three New Hampshire cases that my brother on the other side has indicated compel the conclusion that the liability release is enforceable as a matter of law, and those three cases are Barnstein and McGrath. All three of those cases involved signed liability releases. A signature is an act of legal consequence, which is sufficient to place the signatory on constructive notice of the terms in the contract. That's not the case here. I think we could all agree, if this lift ticket required a signature on it, Mr. Miller would be charged with constructive notice. But that's not the situation we're faced with. We're faced with the situation that was addressed in Reynolds, and was also touched on in Comir, which is the other case I want to address. In Comir, there's two very important facts that set that case apart from this one. First, the plaintiff affirmatively testified that she was aware that the liability release was on the ticket. Mr. Miller did not. Second, there was a large conspicuous sign at the ticket kiosk calling attention to the fact that a liability release existed. There's no evidence that there was any sign at the ticket kiosk in the Mt. I'll use Mr. Quarles' words, the large, bold text of liability release. That was printed in size 4.3 white font. And if you look at the rest of the text that would have been printed on that ticket, which I have included as a courtesy in our reply brief on page 7, there's other text that would have said one day adult, all area, the valid date that the ticket was in effect. And all of that text would have been significantly larger than the largest text in the liability release, including its heading. And it's all printed in black font against a white background, which our expert opines provides for maximum contrast and is much more easily read and observed than white font against a colored background. And if I could just go ahead. I just want to make sure, page 7 of the affilies brief, which reproduces the liability release? Yes. Is that what your client would have seen? No, and I'm glad that you brought that point up. That is a blank ticket stock. That shows what the liability release would have looked like before the text was printed on it. This is what it would have looked like when it was handed to him. With all of this other larger, more attention-grabbing text printed above the liability release, which is printed upside down in size 4.3 white font at the bottom of the ticket. This is what's on page 7 of your reply brief? That's correct. And this represents the size of the ticket that he would have received? We tried to make it as close as possible. That is actually slightly larger than the lift ticket. My understanding was that the lift ticket exemplars were going to be transferred from the district court up to this court. To the extent that hasn't been done, I have a copy of the ticket that was part of the record in the lower court that does have that text on it, which I would be happy to provide to this court if they would like it. Along the way through our rules of getting us part of the record that already exists, you can make a motion to do that. We won't take it that way. Understood. And if I could just leave this court with a comment that was made in Cullinane. To the extent that you could even find that some features of this liability release were printed in a conspicuous manner, in Cullinane, this court said, if everything on the screen is written with conspicuous features, then nothing is conspicuous. And clearly, just a plain visual inspection of this lift ticket shows that the other text that's printed in black-type font, right-side up, is more conspicuous than the liability release. Thank you. Thank you, Your Honors.